27 A.3d 153

### ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

### Gregory Raymond KEINER.

### Misc. Docket AG No. 24, Sept. Term, 2010.

Court of Appeals of Maryland.

Aug. 19, 2011.

Glenn M. Grossman, Bar Counsel for Attorney Grievance Commission of Maryland, for petitioner.

Daniel M. Clements, Esquire of Salsbury, Clements & Bekman, Marder & Adkins, LLC, Baltimore, MD (Katharine O. Porwick, Esquire on pleadings), for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, BARBERA, JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BARBERA, J.

On July 28, 2010, the Attorney Grievance Commission, acting through Bar Counsel, filed a Petition for Disciplinary Action or Remedial Action ("Petition") against Gregory Raymond Keiner ("Respondent"). *See* Md. Rule 16–751. Bar Counsel charged Respondent with violating Maryland Lawyers' Rules of Professional Conduct ("MRPC") 1.4 (Communication)[1] and 8.4 (Misconduct).[2] Pursuant to Maryland Rules

---

1.  MRPC 1.4 provides:

     (a) A lawyer shall:
     (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
     (2) keep the client reasonably informed about the status of the matter;
     (3) promptly comply with reasonable requests for information;  and

16–773 and 16–752(a), we referred the Petition to the Honorable Timothy J. McCrone of the Circuit Court for Howard County, to conduct an evidentiary hearing and make findings of fact and conclusions of law in accordance with Maryland Rule 16–757.

Before that hearing, Judge McCrone was asked by the parties to resolve several discovery and evidentiary matters. Respondent had filed Interrogatories and Requests for Admission, seeking, inter alia, information in connection with Bar Counsel's decision not to enter into a conditional diversion agreement with Respondent. *See* Md. Rule 16–736. Bar Counsel responded to those discovery requests by filing a Motion for Protective Order.

Judge McCrone held a hearing to (1) address the motion for protective order, and (2) determine whether Respondent would be permitted to enter into evidence at the hearing on the Petition both a Report of the Peer Review Panel concerning Respondent and letter communications between Bar Counsel and Respondent regarding the possibility of a conditional diversion agreement. Judge McCrone issued the protective order requested by Bar Counsel on the ground that the information Respondent sought in connection with such an

---

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**2.** MRPC 8.4 provides in relevant part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

agreement is not relevant to any claim or defense at issue at the hearing on the Petition. Judge McCrone further ruled that, because the "Peer Review process is a confidential mediation that is irrelevant to the issues before the court" at the hearing on the Petition, Respondent would not be permitted to have the Report of the Peer Review Panel entered into evidence.

On December 17, 2010, Judge McCrone conducted the evidentiary hearing on the Petition. Respondent appeared with counsel at the hearing and testified. On January 18, 2011, Judge McCrone issued written findings of fact and conclusions of law. He found by clear and convincing evidence that Respondent had violated MRPC 1.4(a) and (b), and 8.4(a), (b), (c), and (d).

## I.

Judge McCrone made the following findings of fact and conclusions of law: [3]

### FINDINGS OF FACT & ANALYSIS

Respondent was admitted as a member of the Maryland Bar on December 18, 2002 and maintained his law practice at 100 E. 23rd Street, Baltimore, Maryland 21218. From February 2003 until March 2009 Respondent worked as an Associate Attorney at The Law Offices of Evan K. Thalenberg, P.A. (hereinafter "law firm"), practicing primarily lead paint litigation. As of 2008, Respondent's income with the firm was $268,700.00.

In 2008, Respondent decided that he wanted to leave the law firm and establish his own practice. From approximately June 2008 until March 2009, in order to facilitate opening his own practice, Respondent began altering and deleting documents in the firm's client files to give the appearance to the firm that client files had been closed, when in fact the files were still active. Respondent deleted and altered documents in the firm's client files to show

---

**3.** Citations to exhibits have been omitted.

lower-than-actual or, in some cases, the absence of, blood-lead levels to support his drafting of a termination letter to the clients of the firm. The subject false termination letters were not sent to the client, but were placed in the firm's file to give the false impression to other members of the firm that the file had been closed. Respondent conceded that he engaged in deception to facilitate taking these clients with him once he left the firm. Respondent further conceded that he did not inform the clients of his actions in misleading the firm to believe these cases lacked merit.

The evidence adduced by [Bar Counsel] further made clear that Respondent solicited approximately two hundred (200) potential clients and sought medical and/or laboratory results for potential clients using his own letterhead while working for the firm. Respondent conceded in his testimony that he utilized the firm's resources such as postage, paper, various office supplies, and the firm's Accurint subscription to locate potential clients. Respondent's deception was discovered when a client contacted the firm and produced a letter from Respondent on Respondent's own letterhead. When Respondent was confronted with the solicitation letter, he wrote a letter to Mr. Thalenberg admitting that he had altered computer records at the firm in four cases.

Mr. John Kazmierczak, another attorney with the firm, was assigned the task of investigating cases Respondent may have altered while working at the firm. Mr. Kazmierczak located four additional client files that were inappropriately altered by Respondent. Mr. Kazmierczak's investigation revealed that Respondent deleted the blood-lead levels in the case summary in the Raven Banks and Derrick Young file, to give the false impression that no blood-lead levels had been found. Respondent then generated a termination letter to the file based upon Respondent's misrepresentation concerning blood-lead levels. Mr. Kazmierczak was able to review an electronic back-up file at the firm which revealed the correct blood-lead levels for Raven Banks of 18 on July 29, 1992, 16 on September 22, 1993, and

17 on November 4, 1993. These numbers were consistent with the actual medical records of Raven Banks and Derrick Young located in the firm's file. Mr. Kazmierczak, who also practiced primarily in the area of lead-paint litigation, testified that these blood-lead levels were sufficient to support a claim.

In the Tyana Baker and Tyrone Baker file, Mr. Kazmierczak located a termination letter in the file drafted by Respondent. When Mr. Kazmierczak reviewed the electronic back-up file he found a case summary reflecting blood-lead levels for Tyrone Baker of 8 on February 28, 1995, 15 on May 24, 1996, and of 9 on January 30, 1997; numbers inconsistent with the termination letter placed in the file by Respondent.

In the Shade Brice, *et al.* file[,] Mr. Kazmierczak observed similar changes to the firm computer file by Respondent. A termination letter generated by Respondent was placed in the file to mislead others at the firm concerning blood-lead levels and the potential for a claim. Upon review of the electronic back-up file at the firm, Mr. Kazmierczak was able to confirm blood-lead levels for Shade Brice, Zhane McDougle, and Kareen McDougle ranging from 17 to 6 for Shade Brice, 17 to 9 for Zhane McDougle, and 3 for Kareen McDougle. According to Mr. Kazmierczak, these blood-lead levels would again support filing a lawsuit, and would not be consistent with the termination letter placed in the file by Respondent.

In the Da' Shira Coley, *et al.* file, Mr. Kazmierczak found a similar effort to mislead by Respondent. No case summary was found for the case. However, a review of the electronic back-up file revealed blood-lead levels for Shanece Coley of 13 on March 16, 1995 and 12 on May 12, 1995 and Da' Shira Coley of 4 on March 15, 1999.

In each of these four client files, Respondent admitted to making the misleading entries in the firm's computer files. Respondent testified that he engaged in these misrepresentations in order to avoid filing claims while working at the firm, and to facilitate filing these claims once he was practic-

ing law on his own. Respondent testified that he returned sixty (60) to seventy (70) files to the firm after his actions were discovered.

In addition to the four client files that Respondent admitted to altering, Mr. Kazmierczak was able to locate four additional client files that had similar alterations. In the Ronald Dalton, Jr. file, Mr. Kazmierczak found no case summary in the file. Respondent had generated a termination letter to the file. Upon review of the electronic back-up file at the firm, a case summary was found that indicated blood-lead levels for Ronald Dalton, Jr. of 6 on August 26, 1997 and 5 on September 3, 1998. In fact, a draft complaint was found approved by the child's mother. According to Mr. Kazmierczak, the blood-lead levels were sufficient to support a viable suit.

In the Devontae Davis file, Respondent had drafted a termination letter despite blood-lead levels for Davontae Davis ranging from 17 to 10. Again, these blood-lead levels were sufficient to be viable for suit.

In the case of Lavontre Ford, *et al.*, Mr. Kazmierczak again found no case summary in the file, and Respondent had drafted a termination letter to the file. Again, a review of the electronic back-up revealed blood-lead levels ranging from 9 to 12 for Lavontre Ford and 8 to 3 for Michaela Harris. Respondent had prepared a draft complaint inconsistent with the termination letter he placed in the file. In addition, the electronic back-up revealed a letter Respondent had sent to the owner of the subject property requesting permission for an environmental testing of the property—a letter that, according to Mr. Kazmierczak, would not have been drafted unless the case was considered to be viable for suit.

In the Shaquille Davis file, the case summary generated by Respondent indicated no blood-lead levels for the children and Respondent had placed a termination letter in the file. Again, the electronic back-up was reviewed and blood-lead levels were found for Shaquille Davis of 18 on Septem-

ber 23, 1997 and 14 on April 23, 1999. These blood-lead levels would be considered viable for suit.

Respondent was unable to recall having altered or deleted these last four files, but did not deny having done so. Respondent was clearly responsible for all of the files in question and the effort to deceive the firm was clearly consistent. While the Court is convinced that Respondent made his best effort to disclose the files he had altered or included misinformation in, he was unable to identify certain files. This lack of precise recall leaves room for concern that not all files have been identified. With respect to the eight files identified, the Court finds that Respondent made alterations, deletions, and included misinformation to give the impression to the firm that the files were closed because they would not be viable claims—and to facilitate Respondent taking the clients and their cases to Respondent's new private practice. This Court finds that Respondent revealed his misconduct to the firm only after the firm had become aware of Respondent's misconduct.

Respondent was terminated by the firm shortly after his misconduct was discovered. Shortly thereafter, Respondent was voluntarily admitted to Howard County General Hospital and was found to be suffering from Major Depressive Disorder and Suicidal Ideations. Respondent was later treated by Christiane Tellefsen, M.D., who diagnosed Respondent with Adjustment Disorder with Depression, Dysthymia and Alcohol Dependence. Respondent suffered from depression during his college years, where he attempted suicide by overdose upon breaking up with his girlfriend. Respondent has been unable to completely refrain from alcohol consumption, although he is working towards that goal.

While the Court finds that alcohol abuse and depression have no doubt adversely impacted Respondent, this Court is not convinced that such difficulties resulted in Respondent being unable to conform his conduct in accordance with the law and with the Maryland Lawyers' Rules of Professional Conduct. Respondent was a very capable lawyer and was

able to manage an extremely busy practice with considerable efficiency. Respondent was able to generate substantial income for the firm because of his skill and obvious attention to detail. The cause of Respondent's actions was a desire to keep for himself more of the income he had been generating for the firm. Of course, an ambition to improve one's financial circumstances is not a fault or defect. The manner in which such goals are pursued is key.

Respondent is clearly remorseful and has generally been very cooperative with Bar Counsel. The success Respondent has enjoyed in representing clients in the past leads this Court to conclude that he must be a skilled advocate. To date, no client appears to have suffered pecuniary loss because of Respondent's misbehavior. And while Respondent's misbehavior came to light because of circumstances he had not anticipated, once discovered, Respondent was forthcoming. Several former clients, employers and opposing counsel have written letters of support on behalf of Respondent. This Court further notes that the instant case represents the only allegation of misconduct ever reported against Respondent.

## CONCLUSIONS OF LAW

Respondent's acts of altering and deleting documents within the firm's client files constitute criminal acts in violation of Maryland Criminal Law Code Ann. § 7–302 and, therefore, violations of Rules 8.4(a), (b), (c) and (d) of the Maryland Lawyers' Rules of Professional Conduct (MRPC). Respondent's criminal conduct reflects adversely on Respondent's honesty, trustworthiness and fitness as a lawyer. Respondent's conduct was deceitful and prejudicial to the administration of justice as Respondent carried out his deception after hours, when others would not observe his actions, because Respondent understood his actions to be inappropriate and unauthorized.

Rules 1.4(a) and (b) require that an attorney communicate with his client regarding representation, including material changes in representation. Because Respondent failed to inform the firm's clients of his intentions, they were unable

to consent to a potentially significant change in representation. Therefore, Respondent acted in a deceptive manner and exceeded the scope of his authority when he altered or deleted documents without his client's permission. Respondent's failure to communicate with his clients regarding a material change in their representation represents a violation of Rules 1.4(a) and (b).

Rule 8.4 describes specific acts that constitute professional misconduct including purposefully violating the MRPC, committing a criminal act that reflects negatively on a lawyer's honesty, and engaging in fraud, misrepresentation or conduct that is prejudicial to the administration of justice. In this case, Respondent knowingly violated the MRPC when he altered and deleted documents with the intent to solicit said clients for his own law practice while he was still employed by The Law Offices of Evan K. Thalenberg, P.A. [Respondent] committed a criminal act that reflected adversely on his honesty, trustworthiness and fitness as a lawyer by altering and deleting the firm's electronic files on the firm's computers in order to solicit these clients for his own financial benefit.

[Respondent] engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he altered and deleted documents and sent hundreds of solicitation letters on his own letterhead to his law firm's current clients, using his firm's resources. [Respondent] engaged in conduct that is prejudicial to the administration of justice when he lied about the blood-lead levels in order to have his firm believe that the clients did not have a viable case. Therefore, there is clear and convincing evidence that [Respondent's] acts of misconduct were in violation of Rules 8.4(a), (b), (c) and (d).

Additionally, although there was proof that [Respondent] suffered from Depression and Alcoholism, the evidence presented by Respondent was insufficient to conclude that his conduct was the result of these ailments. Therefore, this Court cannot find, based upon the evidence adduced, that [Respondent] was experiencing debilitating mental or physical health conditions that would interfere with his ability to

accomplish normal day to day activities and result in [Respondent's] utter inability to conform his conduct according to the law and with the Maryland Lawyers' Rules of Professional Conduct.

In summary, the Court finds that [Bar Counsel] has sustained each alleged violation of the Maryland Lawyers' Rules of Professional Conduct, the Maryland Rules and Md.Code Ann., Crim. Law § 7–302, and that such proof was by a standard of clear and convincing evidence.

## II.

This Court "has original and complete jurisdiction" over attorney discipline matters. *Attorney Grievance Comm'n v. Fox,* 417 Md. 504, 528, 11 A.3d 762, 776 (2010) (citation omitted). Although we conduct an independent review of the record developed before the hearing judge, we will not disturb the hearing judge's findings of fact unless clearly erroneous. *Attorney Grievance Comm'n v. Edib,* 415 Md. 696, 706, 4 A.3d 957, 964 (2010). The hearing judge is entitled to weigh the evidence, *Attorney Grievance Comm'n v. Byrd,* 408 Md. 449, 479, 970 A.2d 870, 887 (2009), assess the witnesses' credibility, *Attorney Grievance Comm'n v. Jarosinski,* 411 Md. 432, 448, 983 A.2d 477, 487 (2009), and resolve any conflict in the evidence, *Attorney Grievance Comm'n v. Mba–Jonas,* 402 Md. 334, 344, 936 A.2d 839, 844 (2007). We review de novo the hearing judge's recommended conclusions of law. *Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d 226, 236 (2008) (citation omitted).

At the hearing on the Petition, Bar Counsel "has the burden of proving the averments of the petition by clear and convincing evidence." Md. Rule 16–757(b). Respondent has the burden of establishing matters of mitigation or extenuation, if any, by a preponderance of the evidence. *Id.*

Bar Counsel filed no exceptions to Judge McCrone's findings of fact or conclusions of law. Respondent takes no exception to Judge McCrone's conclusion that Respondent's conduct violated Rules 1.4 and 8.4. Indeed, Respondent

throughout the disciplinary proceeding has conceded those violations.

Respondent, though, has noted exceptions to certain of the hearing judge's factual findings. He assails:

(1) "The trial court's misidentification of Christian Tellefsen, M.D. and omission of Mr. Keiner's treating health care providers";

(2) "The trial court's failure to acknowledge the circumstances surrounding Mr. Keiner's alcohol abuse and Mr. Keiner's continuing substance abuse treatment with James P. Quinn";

(3) "The trial court's failure to consider the recommendation of the Peer Review Committee";

(4) "The trial court's errors regarding the computer altered files";

(5) "The trial court's failure to identify mitigating factors on behalf of Mr. Keiner"; and

(6) The trial court's "err[or] in making its ultimate conclusion," i.e., "that Mr. Keiner's behavior was not the result of his depression and alcohol abuse."

With respect to the third of these exceptions, Respondent refers in "Respondent's Exceptions to the Findings of Fact and Conclusions of Law of the Hearing Judge" ("Exceptions") both to the recommendations and commentary found in the Peer Review Report and to the letter communications between his counsel and Bar Counsel in connection with a possible conditional diversion agreement. Respondent argues that the circumstances of this case warrant a return of the matter to the Attorney Grievance Commission for a conditional diversion agreement between him and Bar Counsel. Respondent attached as an Exhibit to the Exceptions the documents to which he refers. Those are the very documents that Judge McCrone had ruled inadmissible at the hearing on the Petition.

Bar Counsel has filed a motion to strike the Exhibit and all of Respondent's references to the Exhibit in his Exceptions.

Because the substance of the motion to strike goes to Respondent's third exception, we shall rule on the motion as we address that exception later in this opinion.

### III.

We consider, in turn, each of Respondent's exceptions.

**1. "The trial court's misidentification of Christiane Tellefsen, M.D. and omission of Mr. Keiner's treating health care providers"**

██ In support of this exception, Respondent makes several arguments. He asserts, first, that Judge McCrone erroneously stated in the written findings of fact that Respondent was treated by Dr. Christiane Tellefsen, when in fact Dr. Tellefsen was hired by Bar Counsel to evaluate Respondent for purposes of the disciplinary proceeding. Bar Counsel likewise points out this factual error in the hearing judge's findings, albeit not as a "formal exception." The record makes clear that Dr. Tellefsen did not treat Respondent. We therefore sustain that aspect of Respondent's first exception.

Respondent further argues that Judge McCrone overlooked Respondent's mental health treatment, which included eight months of psychiatric treatment from Dr. Maguid N. Mansour followed by weekly therapy sessions with psychologist Philip D. Robison, Ph.D. In support of that contention, Respondent points out that there is no mention in Judge McCrone's findings of Dr. Mansour's report, in which Dr. Mansour opined that Respondent's "depression was a major contributing factor in his recent aberrant behavior," and, "with proper treatment of his Depressive Disorder, [Respondent] should be able to go back to practicing law, with no further problems relating to his firm or to his clients." Respondent also notes that Judge McCrone's findings do not mention Dr. Robison's report, in which Dr. Robison opined that Respondent "has been very cooperative with treatment," "has made significant efforts to work on his problems," and "has gained significant insight into how his typically unconscious automatic ways of thinking and

perceptions have greatly contributed to his depression and at times poor judgment."

It is true that Judge McCrone did not mention in his factual findings Drs. Mansour and Robison or their reports. That does not mean, though, that Judge McCrone failed to consider the opinions of Respondent's treatment providers. In *Attorney Grievance Comm'n v. Braskey*, 378 Md. 425, 836 A.2d 605 (2009), we faced a similar exception to omissions in a hearing judge's findings and responded with the following:

> The hearing judge, in his report, made no note of [certain phone calls that the respondent testified he had made to Blue Cross/Blue Shield in connection with representation of a client]. We are unable to say why the hearing judge omitted reference to respondent's testimony regarding [those] calls. It may be that the judge did not believe respondent; it may have been an oversight. In any case, even if the judge believed respondent, the hearing judge is not required to recount all of the evidence presented at the hearing. Accordingly this exception is overruled.

*Id.* at 446, 836 A.2d at 618 (citation omitted).

Furthermore, barring explicit evidence in the record to the contrary, we presume that any hearing judge in conducting attorney grievance matters, as in any other legal proceeding, understands and carries out his or her obligation to follow the law. *See, e.g., Attorney Grievance Comm'n v. Jeter*, 365 Md. 279, 288, 778 A.2d 390, 395 (2001) ("[W]e presume trial judges know the law and correctly apply it.").

Respondent made his alcohol abuse and diagnosed depression the centerpiece of his defense to the MRPC charges, and he and Bar Counsel gave much attention to those issues at the hearing. Furthermore, both Respondent and Bar Counsel submitted to Judge McCrone proposed factual findings and legal conclusions, in both of which submissions Respondent's mental health issues [4] were thoroughly addressed. We there-

---

4. Judge McCrone did not find that Respondent suffers from alcoholism, although, as we have said, he did find that Respondent abused alcohol.

fore can safely presume that Judge McCrone considered the information supplied in the reports of Respondent's mental health treatment providers, gave that evidence the weight the judge believed it deserved, and ultimately was not persuaded that Respondent's mental health issues caused, or even contributed to a large degree, to the conduct that underlay Respondent's violations of the Rules of Professional Conduct. Judge McCrone specifically addressed Respondent's alcohol abuse and depression. He wrote: "While the Court finds that alcohol abuse and depression have no doubt adversely impacted Respondent, this Court is not convinced that such difficulties resulted in Respondent being unable to conform his conduct in accordance with the law and with the Maryland Lawyers' Rules of Professional Conduct." There is support in the record for Judge McCrone's findings and, as such, they are not clearly erroneous.

In sum, though we sustain the part of Respondent's first exception that relates to the judge's mistake in identifying Dr. Tellefsen as Respondent's treating physician, we overrule the balance of the exception.

### 2. "The trial court's failure to acknowledge the circumstances surrounding Mr. Keiner's alcohol abuse and Mr. Keiner's continuing substance abuse treatment with James P. Quinn"

Respondent's second exception involves two sub-contentions, each relating to his alcohol dependency. Respondent first contends that Judge McCrone failed to acknowledge Respondent's alcohol dependency while he was working at The Law Offices of Evan K. Thalenberg, P.A. In support, Respondent directs us to his testimony that, during the time in which his misconduct occurred, he was consuming 2–7 alcoholic drinks every night, approximating consumption of a gallon of whiskey

---

In *Palmer,* we included, for purposes of that opinion, "drug and alcohol abuse and dependency" "under the banner of 'mental disability.'" *Attorney Grievance Comm'n v. Palmer,* 417 Md. 185, 209 n. 13, 9 A.3d 37, 51 n. 13 (2010). We shall do likewise here.

every week. Respondent's second sub-contention is that Judge McCrone failed to acknowledge that, following the discovery of Respondent's misconduct, he "voluntarily has been meeting with James P. Quinn," the Director of the Lawyer Assistance Program of the Maryland State Bar Association, "and undergoing alcohol abuse treatment." In addition, Respondent refers us to the letter Mr. Quinn wrote to Judge McCrone in support of Respondent, in which Mr. Quinn opined that Respondent "is a good candidate for a conditional diversion agreement."

This exception fails for much the same reasons as does Respondent's first exception. We agree with Respondent that Judge McCrone's factual findings omit any reference to the amount of alcohol Respondent said he was consuming during the time he was engaging in the misconduct at issue. Likewise omitted from the hearing judge's findings is any reference to the counseling Respondent was receiving from Mr. Quinn. It does not follow, though, that Judge McCrone necessarily failed to consider the evidence; rather, we presume that the judge simply gave the evidence the weight he believed it deserved, in finding that, although "alcohol abuse and depression have no doubt adversely impacted Respondent, this Court is not convinced that such difficulties resulted in Respondent being unable to conform his conduct in accordance with the law and with the Maryland Lawyers' Rules of Professional Conduct." We therefore overrule this exception.

### 3. "The trial court's failure to consider the recommendation of the Peer Review Committee"

▮ At bottom, this exception challenges the legal correctness of Judge McCrone's ruling on the inadmissibility of the Report of the Peer Review Panel (hereafter, "Peer Review Report") and the letter communications between Bar Counsel and Respondent's counsel concerning the availability to Respondent of a conditional diversion agreement. In connection with this exception is Bar Counsel's motion asking us to strike from the record the Exhibit containing the Peer Review Report and letter communications, and all references to them

in Respondent's Exceptions. For the reasons that follow, we grant the motion and overrule the exception.

Respondent makes plain in his Exceptions why, in his view, he should be permitted to rely on the contents of the Exhibit. He states that he seeks to use the "Report of the Peer Review Committee to support his contention that a conditional diversion agreement is the appropriate disposition." Respondent does not contend that the Peer Review Report and letter communications are relevant to either the charged rule violations or mitigation.

For his part, Bar Counsel argues in the motion to strike (as he did before Judge McCrone) that the Peer Review Report and letter communications are irrelevant to the issues to be decided, either by the hearing judge, or, ultimately, by us. In support, Bar Counsel directs us to several of our opinions on the subject, among which we find *Attorney Grievance Comm'n v. Kinnane*, 390 Md. 324, 888 A.2d 1178 (2005), particularly instructive.

In that case, the respondent Kinnane had sought at his evidentiary hearing to have admitted into evidence the Peer Review Panel's Report, for the purpose of "clarify[ing] the record 'with respect to how the formal Bar Counsel petition ultimately was arrived at and filed with the Circuit Court' and that filing of [the petition] was not recommended to Bar Counsel." *Kinnane*, 390 Md. at 334, 888 A.2d at 1184. The hearing judge refused to admit the Peer Review Report into evidence, reasoning that the Peer Review recommendation was "irrelevant for any material purpose and that admission of the Panel Report would violate Maryland Rule 16–723(a)...." *Id.* at 333–34 n. 9, 888 A.2d at 1184 n. 9.

We upheld the hearing judge's evidentiary ruling and therefore overruled Kinnane's exception to it. We emphasized that Rule 16–743—the rule providing for the Peer Review process—"makes clear the limited office" that it performs. *Kinnane*, 390 Md. at 335, 888 A.2d at 1185. We explained that the Peer Review Panel's recommendation function, like that of Bar Counsel, is solely for the benefit of the Attorney Griev-

ance Commission, which then determines "whether, and what, charges are to be filed[.]" *Id.*, 888 A.2d at 1185. "Thus, whether Bar Counsel [or the Peer Review Panel] recommends the filing of charges or another procedure is not only not dispositive ... it is irrelevant." *Id.* at 335–36, 888 A.2d at 1185; *see also id.* at 338, 888 A.2d at 1187 (characterizing the function of Peer Review Panels as merely "recommendatory, one that is not binding and certainly not dispositive" and, consequently, "there is even more reason to 'insulate' Peer Review Panel Reports from subsequent disclosure at later stages of the attorney discipline process").

In short, the recommendation of the Peer Review Panel suggests to the Attorney Grievance Commission, but not to us, what the majority of the panel members considers to be the appropriate course of a given attorney discipline investigation. *Attorney Grievance Comm'n v. Lee*, 387 Md. 89, 108–09, 874 A.2d 897, 908 (2005) ("the purpose of the Peer Review Panel is not principally to make recommendations as to the appropriateness of formal charges"; if it appears to the panel that there is a "substantial basis for formal charges and there is reason to believe that the [respondent] attorney has committed professional misconduct or is incapacitated, the Panel may ... make an appropriate recommendation to the Commission or ... inform the parties of its determination and allow the attorney an opportunity to consider a reprimand or a Conditional Diversion Agreement").[5]  If it happens that the Attorney Grievance Commission directs Bar Counsel to file a Petition for Disciplinary or Remedial Action, as was the case here, then the Peer Review Panel's recommendation has no further relevance. *Cf. Attorney Grievance Comm'n v. Cappell*, 389 Md. 402, 420, 886 A.2d 112, 123 (2005) ("The issue of assessing the appropriate sanction to be imposed after review of the merits of a disciplinary action is a matter left solely to the province of this Court.").

---

**5.** For a thorough discussion of the Peer Review process, see *Attorney Grievance Comm'n v. Lee*, 387 Md. 89, 108–09, 874 A.2d 897, 908 (2005).

Furthermore, and in any case, Peer Review Panel Reports are confidential. *See Kinnane,* 390 Md. at 336, 888 A.2d at 1185 ("The Report of the Peer Review Panel qualifies as 'records and proceedings [that] are confidential and not open to public inspection [whose] contents may not be revealed by the Commission, the staff of the Commission, Bar Counsel, the staff and investigators of the Office of Bar Counsel, members of the Peer Review Committee, or any attorney involved in the proceeding.'" (quoting Md. Rule 16–723)). Respondent presents us with no exception to this rule of confidentiality, and we know of none.

Respondent's exception and Bar Counsel's motion to strike are both controlled by *Kinnane.* Much as the respondent in *Kinnane* evidently sought ultimately to accomplish in his case,[6] Respondent sought to have the Peer Review Report entered into evidence at the hearing on the Petition, and now considered by us, for no reason other than to suggest that a conditional diversion agreement should have been the appropriate disposition of the matter, rather than the filing of formal charges. As in Kinnane's case, Judge McCrone properly ruled the evidence inadmissible. And, as in *Kinnane,* we uphold that evidentiary ruling. We therefore grant Bar Counsel's motion to strike and overrule the exception insofar as the motion and exception relate to the Peer Review Report.

For much the same reasons, we likewise grant the balance of Bar Counsel's motion to strike and overrule the remainder of Respondent's exception, in connection with a conditional diversion agreement. By the plain language of Maryland Rule 16–736, a conditional diversion agreement is entirely voluntary in nature. The rule provides that "neither Bar Counsel nor the [attorney] is obliged to propose or enter into a conditional diversion agreement." *Attorney Grievance*

---

**6.** Although not expressly addressed in the *Kinnane* opinion, we surmise that the only plausible reason for Kinnane's seeking admission of the Peer Review Panel's recommendation was that he hoped that this Court, upon being confronted with that recommendation, would be persuaded that a sanction less severe than that recommended by Bar Counsel was appropriate.

*Comm'n v. Olver,* 376 Md. 650, 658, 831 A.2d 66, 71 (2003).[7] Respondent nevertheless argues that: (1) a conditional diversion agreement is appropriate under the circumstances of his case; (2) Bar Counsel "failed to properly consider a conditional diversion agreement"; and (3) therefore, the case should be remanded to the Attorney Grievance Commission, to permit consideration of a conditional diversion agreement. Respondent relies heavily on *Cappell,* 389 Md. 402, 886 A.2d 112, to advance the argument.

In *Cappell,* the attorney respondent was found by the hearing judge to have committed several acts of misappropriation by using client funds for personal and firm expenses. In addition to other mitigating factors, the hearing judge found that Cappell's major depression and personality disorder were the "root cause" of his misconduct. *Id.* at 405, 886 A.2d at 114. We took the unusual step of remanding the case so the Attorney Grievance Commission and Bar Counsel could reconsider a conditional diversion agreement even though disciplinary proceedings had begun. *See id.* at 426, 886 A.2d at 126.

Respondent characterizes what occurred in *Cappell* this way: "[U]nder the facts and circumstances of that case, particularly Mr. Cappell's depression, this Court found that remand for proper consideration of a Conditional Diversion Agreement by the Attorney Grievance Commission was required." Respondent's characterization of the reason for remand misses the mark.

We deemed a remand necessary in *Cappell* because it was evident to us that Bar Counsel misunderstood the scope and availability of conditional diversion agreements under Maryland Rule 16–743. Specifically, Bar Counsel believed that our decision in *Attorney Grievance Comm'n v. Vanderlinde,* 364

---

7. We ordered a remand in *Olver* to allow Bar Counsel to consider "whether to propose a conditional diversion agreement," because the conditional diversion agreement rule went into effect after the Petition for Disciplinary and Remedial Action was filed, and therefore neither Bar Counsel nor Olver had the opportunity to consider the possibility of resolving the matter through such an agreement. *Attorney Grievance Comm'n v. Olver,* 376 Md. 650, 658, 831 A.2d 66, 71 (2003).

Md. 376, 773 A.2d 463 (2001), rendered conditional diversion agreements per se unavailable "in matters involving misappropriation of client funds or other dishonest conduct." *Cappell,* 389 Md. at 415, 886 A.2d at 119–20. In correcting Bar Counsel's misconception, we explained that a conditional diversion agreement may be appropriate when "there is competent evidence presented from which Bar Counsel and therefore the Commission may conclude that an attorney's unprofessional conduct was not solely the result of wilful or intentional[ ] dishonesty. . . ." *Id.* at 426, 886 A.2d at 126. We noted that the Committee note for Maryland Rule 16–736(a) provides: "Examples of conduct that may be susceptible to a conditional diversion agreement include conduct arising from[,]" inter alia, "emotional stress or crisis or abuse of alcohol or other drugs." Under *those* circumstances, we explained, the resulting "[m]ental impairment is a mitigating factor and may tend to negate the wilful or intentional nature of an attorney's misconduct." *Cappell,* 389 Md. at 422, 886 A.2d at 124. We took pains to make clear that the *Vanderlinde* standard of mitigation (i.e., that "when faced with proffers of mitigation involving mental disability, such proffers must pass the 'root cause' analysis" to be compelling, *see Attorney Grievance Comm'n v. Palmer,* 417 Md. 185, 209, 9 A.3d 37, 51–52 (2010) (emphasis omitted)) is "a separate standard and is not a factor in deciding whether a case qualifies for disposition under Rule 16–736." *Cappell,* 389 Md. at 422, 886 A.2d at 124.

Important for present purposes, we said nothing in *Cappell* concerning whether a conditional diversion agreement was in fact advisable in that case. Indeed, *Cappell* does not stand remotely for the proposition that a conditional diversion agreement is available to us as a potential disposition of formal charges that have been filed, heard, and proved.

Respondent does not contend that Bar Counsel misunderstood the scope of the conditional diversion agreement rule, as was the case in *Cappell.* Respondent argues instead merely that the "facts, circumstances, and mitigating factors" warrant remand for reconsideration of a conditional diversion agreement. We have explained why that argument fails at its start;

there is simply no authority in either the pertinent rules of procedure or our cases interpreting them that supports the argument at this stage of the grievance process.

To summarize what we have decided with regard to this exception and Bar Counsel's motion to strike: For all the reasons we have set forth, Judge McCrone did not err in ruling inadmissible the Peer Review Report and the letter communications between Bar Counsel and Respondent's counsel concerning conditional diversion agreements. Therefore, we grant the motion to strike in its entirety, and we overrule the exception.

### 4. "The trial court's errors regarding the computer altered files"

■ Judge McCrone included the following in his written findings: "While the Court is convinced that Respondent made his best effort to disclose the files he had altered or included misinformation in, he was unable to identify certain files. This lack of precise recall leaves room for concern that not all files have been identified." Respondent excepts to Judge McCrone's finding that "not all of the [altered client] files have been identified." Respondent contends that this finding is clearly erroneous because "[i]t is undisputed that [Respondent] only altered files on the firm's computer system in July and August 2008," and "all eight [files] would never have been discovered by the Thalenberg Firm absent [Respondent's] honest disclosure to the firm." Respondent asserts that it was the firm's decision not to search its computer files to ensure that no other files had been altered outside of the July through August 2008 time window. Respondent reasons that Judge McCrone drew upon that evidence to "speculate" that the firm might not have accounted for all files altered by Respondent. Respondent concludes that "[t]he Thalenberg [Firm] chose not to complete a full investigation of its files and Mr. Keiner should not be assigned with speculative findings of the trial court based on what that investigation might have revealed."

Given the evidence showing that not all of the firm's computer files were searched, it of course remains theoretically possible that one or more altered files remain undiscovered. We suspect that might be the extent of what Judge McCrone inferred from the evidence. By the same token, the evidence of a less-than-complete search of the computer files allows for no more than a mere "theoretical" possibility; such evidence is legally insufficient to establish, by the required "clear and convincing evidence" standard of proof, that Respondent altered additional client files. We therefore sustain that aspect of this exception.

Respondent also argues in this exception that Judge McCrone clearly erred in finding that all eight of the client cases he altered were "viable." Respondent argues: "Mr. Kazmierczak testified that only four of the eight cases were litigated by the Thalenberg Firm, thereby indicating that the non-prosecuted claims were not viable." Judge McCrone, however, could reasonably conclude from the evidence, and he obviously did, that Respondent altered each of the eight files because Respondent believed the cases were "viable," and it mattered very little how the firm ultimately decided to handle those cases. We therefore overrule that aspect of this exception.

5. **"The trial court's failure to identify mitigating factors on behalf of Mr. Keiner"**

In prior opinions we have recognized twelve factors identified by the American Bar Association as appropriate for consideration in mitigation if proved by a respondent, by a preponderance of the evidence. *E.g., Fox,* 417 Md. at 538–39, 11 A.3d at 782 (2010); *Attorney Grievance Comm'n v. Sweitzer,* 395 Md. 586, 598–99, 911 A.2d 440, 447 (2006). Respondent asserts that he proved the existence of all but one of those factors, and he takes exception to Judge McCrone's failure to identify them as factors in mitigation. Specifically, Respondent asserts that Judge McCrone erred in not explicitly identifying the following facts as mitigating factors:

1. [Respondent] has an absence of a prior disciplinary record. This is the first and only disciplinary proceeding instituted against [Respondent].

2. [Respondent] suffered from personal and emotional problems. [Respondent] is an alcoholic and suffers from depression. Dr. Maguid Mansour, [Respondent's] treating psychiatrist, opined that Respondent "has been suffering from a Depressive Disorder all through his life" and that his "depression was a major contributing factor in his recent aberrant behavior." Dr. Christiane Tellefsen, the psychiatrist for the [Bar Counsel], opined that [Respondent] "has suffered from Dysthymia or chronic mild depression and Alcohol Dependence for years." According to Dr. Tellefsen, [Respondent] is "definitely an empty glass person." She went on to explain that [Respondent's] Dysthymia "does contribute to the dishonesty."

3. [Respondent] made timely good faith efforts to make restitution or to rectify the consequence of his misconduct. Following the discovery of his conduct, [Respondent] provided the Thalenberg Firm with a list of cases including the statute of limitations date for each case which he generated in his own name and as a potential client of his own. He handed over all of the materials he had collected for each [of] these potential clients. [Respondent] also disclosed to the Thalenberg Firm that he had altered on the firm computer the client files for four clients (1) Raven Bank and Derrick Young, (2) Tyanna Baker, (3) Shade Bride, Zhane McDougle, Raheem McDougle, and Kareen McDougle, (4) Da' Shira Coley and Shanece Coley. But for [Respondent's] honest disclosure, the Thalenberg Firm would not have learned about [Respondent's] alteration to the client files for the clients (1) Raven Bank and Derrick Young, (2) Tyanna Baker, (3) Shade Bride, Zhane McDougle, Raheem McDougle, and Kareen McDougle, (4) Da' Shira Coley and Shanece Coley, (5) Ronald Dalton, Jr., (6) Davontae Davis, (7) Lavontre Ford and Michaela Harris, and (8) Shaquille Davis, Tristian Davis, and Imani Frazier.

4. [Respondent] made full and free disclosure to the disciplinary board and exemplified a cooperative attitude toward the proceedings. [Respondent] voluntarily met with the Attorney Grievance Commission's investigator and psychiatrist. He answered all of their questions and was cordial, truthful, and cooperative.

5. [Respondent] is inexperienced in the practice of law. [Respondent] was admitted to the Bar in December 2002, five and one-half years before his admitted offense. In that time period he took only one case to trial and only as second chair.

6. [Respondent] has good character and a good reputation. Six former clients, five former opposing counsel, and two former co-workers wrote letters of support on behalf of [Respondent]. John Kazmierczak, testifying on behalf of the Thalenberg Firm, even acknowledged that [Respondent] was a "reasonably competent lawyer."

7. [Respondent] suffered from depression.

8. There was no delay in the disciplinary proceedings. [Respondent] timely responded to discovery that was propounded on him. He made himself available for deposition and did not cause any delay in the disciplinary proceedings. And he answered all questions ever asked of him.

9. [Respondent] has undergone interim rehabilitation. Since the discovery of his actions, [Respondent] has undergone regular mental health treatment. [Respondent] voluntarily admitted himself to Howard County General Hospital for the treatment of his depression and suicidal ideation. [Respondent] regularly meets with James P. Quinn, Director of the Lawyer Assistance Program and attends AA meetings.

10. [Respondent] has had the imposition of other penalties or sanctions. In March 2009, [Respondent] was fired from the Thalenberg Firm. Since that time he has not generated any income as a lawyer.

11. [Respondent] is remorseful for his conduct. [Respondent] testified that he was remorseful for his actions. He

broke down and cried on the stand when he testified about his conduct.

Judge McCrone did not explicitly identify each of the above items as factors in mitigation of Respondent's violations. Judge McCrone, though, did make express written findings of the existence of each of the above set of facts. Moreover, Bar Counsel, in his "Recommendation for Sanction," does not dispute any of Judge McCrone's findings, much less those upon which Respondent relies in this exception. We therefore shall sustain Respondent's exception, as it is phrased, and consider the relevant, undisputed factual findings in determining the appropriate sanction for his misconduct.

6. **"The trial court erred in making the ultimate conclusion," i.e., "that Mr. Keiner's behavior was not the result of his depression and alcohol abuse."**

Respondent's final exception flows from the first two of his exceptions, namely, Judge McCrone's failure to account for the state of Respondent's mental health and the treatment therefor. Respondent argues that, based on those exceptions, it is evident that Judge McCrone erred in drawing the ultimate factual conclusion that Respondent's behavior was not the result of his depression and alcohol dependency.

We have sustained certain aspects of each of Respondent's first and second exceptions. We have agreed with Respondent that Judge McCrone mistakenly identified Dr. Tellefsen as his treating physician; omitted any specific reference to his mental health therapists (Dr. Mansour and Dr. Robison) and their favorable reports; and omitted any reference to the undisputed evidence that Respondent was meeting regularly with James Quinn, who wrote favorable comments on Respondent's behalf. We disagreed with Respondent, though, that it followed from those omissions in Judge McCrone's written findings that Judge McCrone failed to consider any of that evidence; accordingly we overruled the thrust of those two exceptions.

We concluded that the record supported Judge McCrone's ultimate factual finding that, although Respondent abused alcohol and suffered from depression, those conditions were not the cause of his misconduct. Judge McCrone further found that Respondent was not "experiencing debilitating mental or physical health conditions that would interfere with his ability to accomplish normal day to day activities and result in Respondent's utter inability to conform his conduct according to the law and with the Maryland Lawyers' Rules of Professional Conduct." Indeed, even Dr. Mansour and Dr. Robison did not go so far as to opine in their written reports (neither testified at the hearing) that Respondent's alcoholism and depression were the "cause" of Respondent's misconduct. The most Dr. Mansour and Dr. Robison could say was that Respondent's mental health issues were a "major contributing factor" of the misconduct. Further, Respondent himself admitted, during his cross-examination by Bar Counsel, that his depression and alcoholism had not caused him to neglect any of his clients' cases or rendered him unable to otherwise function at a high level in his legal and financial affairs.

We have mentioned that, at the time Judge McCrone issued his factual findings and conclusions of law, he had before him both Bar Counsel's and Respondent's proposed findings and conclusions of law. We repeat that, notwithstanding Judge McCrone's omission of any reference to Respondent's mental health practitioners and treatment, we safely can, and do, presume that Judge McCrone considered all of the evidence before him, including the reports of Drs. Mansour and Robison. The evidence presented at the hearing amply supported Judge McCrone's finding on this point. Accordingly, we overrule Respondent's exception to Judge McCrone's finding that Respondent's "behavior was not the result of his depression and alcohol abuse."

## IV.

We have said that Respondent concedes that his conduct violated Rules 1.4(a) and (b) and 8.4(a), (b), (c), and (d), and we agree that those violations are supported by clear

and convincing evidence. Accordingly, our remaining task is to determine the appropriate sanction.

The purpose of disciplinary proceedings is "not to punish the lawyer, but to protect the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Sucklal,* 418 Md. 1, 10 n. 3, 12 A.3d 650, 655 n. 3 (2010) (internal quotation marks and citation omitted). We have explained that the public is protected "in two ways" by the imposition of sanctions upon attorneys who engage in professional misconduct:

> We protect the public through sanctions against offending attorneys in two ways: through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations.

*Id.,* 12 A.3d at 655 n. 3 (internal quotation marks and citation omitted).

Bar Counsel recommends disbarment as the appropriate sanction for Respondent's misconduct. Respondent urges this Court to impose a period of suspension,[8] arguing that he has established sufficient mitigation to obviate the need for disbarment. To decide this question, we consider the egregiousness of Respondent's misconduct in conjunction with the established mitigation. *Attorney Grievance Comm'n v. Bleecker,* 414 Md. 147, 176, 994 A.2d 928, 945 (2010).

The violations found in this case are serious. In addition to failing to communicate with certain clients in violation of Rule 1.4, Respondent misappropriated the law firm's resources, by using the firm's postage, paper, various office supplies, and Accurint subscription to locate potential clients. In addition,

---

8. In the alternative, Respondent has asked this Court to remand this disciplinary matter so that the Commission could consider a Conditional Diversion Agreement. For the reasons explained *supra,* we decline to do so.

Respondent altered and deleted documents within the firm's electronic client files. Respondent does not contest Judge McCrone's finding by clear and convincing evidence that this conduct violates Maryland Code (2002), § 7–302 of the Criminal Law Article (CrL).[9] Judge McCrone further found, and Respondent does not dispute, that he altered the law firm's computer files to make it appear that the cases were meritless and therefore "closed," when in fact those cases appeared to have merit. Respondent took those actions with the intention of taking those clients from the law firm and making them his, once he established his own practice.

All of the above was caused, not by mental illness or alcohol abuse but rather, as Judge McCrone found, by Respondent's "desire to keep for himself more of the income he had been generating for the firm." Put simply, Respondent's conduct was dishonest, it was intentional, and it was solely motivated by the desire for personal gain.

Conduct "involving dishonesty, fraud, or deceit, carries the risk of the ultimate sanction by this Court." *Attorney Grievance Comm'n v. White,* 354 Md. 346, 366, 731 A.2d 447, 458 (1999). Accordingly, "[when] it appears that the attorney has engaged in intentional dishonest conduct . . ., [the] bar is set especially high, and disbarment will be the appropriate sanction absent 'compelling extenuating circumstances.'" *Palmer,* 417 Md. at 207, 9 A.3d at 50 (quoting *Attorney Grievance Comm'n v. Steinberg,* 395 Md. 337, 375, 910 A.2d 429, 451 (2006)). *Accord Attorney Grievance Comm'n v. Guberman,* 392 Md. 131, 137, 896 A.2d 337, 340–41 (2006) (stating that "disbarment follows as a matter of course 'when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circum-

---

**9.** Maryland Code (2002), § 7–302 of the Criminal Law Article provides, inter alia, that a person may not intentionally and willfully exceed that person's authorized access to a computer with the intent to "alter, damage, or destroy all or any part of data or a computer program stored, maintained, or produced by a computer . . . ."

stances' " (quoting *Maryland State Bar Ass'n, Inc. v. Agnew*, 271 Md. 543, 553, 318 A.2d 811, 817 (1974))).

Before examining whether there exists in Respondent's case the requisite "compelling extenuating circumstances" that make appropriate a sanction less than disbarment, we say a few words about *Vanderlinde*, upon which Bar Counsel relies in arguing for the ultimate sanction. In *Vanderlinde*, we set forth what, from the text of that case alone, would suggest a bright line rule that,

> in cases involving intentional dishonesty, misappropriation, fraud, stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC.

*Vanderlinde*, 364 Md. at 413–14, 773 A.2d at 485.

We recently clarified, though, that the "bright line rule of *Vanderlinde* should be understood to apply only to 'the facts and circumstances of that case'—i.e., cases of misconduct involving intentional misappropriation, intentional dishonesty, fraud, stealing, and serious criminal offenses *where mental disability is offered as mitigation of the normal sanction of disbarment.*" *Palmer*, 417 Md. at 211, 9 A.3d at 52–53 (emphasis added). And, we extracted from *Vanderlinde* a three-part test. First, the evidence of mental disability must be "almost conclusive, and essentially uncontroverted" that the attorney "had a serious and debilitating mental condition." *Id.* at 212, 9 A.3d at 53. Second, the mental disability must be the " 'root cause' for the misconduct—meaning, it must 'affect[ ] the ability of the attorney in normal day to day activities, such that the attorney was unable to accomplish the least of those activities in a normal fashion.' " *Id.*, 9 A.3d at 53. Third, the mental disability must have "result[ed] in the attorney's utter inability to conform his or her conduct in accordance with the law and with the [Rules of Professional

Conduct]." *Palmer,* 417 Md. at 212, 9 A.3d at 53 (quoting *Vanderlinde,* 364 Md. at 414, 773 A.2d at 485, 488).

As applied to the present case, Respondent's mental disabilities [10] fail the *Vanderlinde* test; indeed, Respondent does not attempt to argue the contrary. Judge McCrone found that Respondent's misconduct was not the result of his alcohol abuse and depression, and those conditions did not "result in the attorney's utter inability to conform his or her conduct in accordance with the law and with the [Rules of Professional Conduct]." Respondent's psychological issues at the time of his misconduct are not "sufficient to meet *Vanderlinde's* requirements, and therefore, without more, do not mitigate the sanction here to less than disbarment." *See Palmer,* 417 Md. at 212–13, 9 A.3d at 53.

Respondent argues that the other mitigating factors in the case, taken together, amount to the "compelling extenuating circumstances" that would entitle him to a sanction less than disbarment. Those factors, which are based on undisputed factual findings by Judge McCrone and we have accepted as mitigating, are: Respondent suffered from depression and alcoholism at the time of the incident; no client was harmed as a result of his actions; he is remorseful; he was cooperative with Bar Counsel; he is well-regarded by his clients and peers; he has no previous disciplinary record; he has suffered other consequences as a result of his misconduct (loss of employment, income, and professional reputation); he underwent interim rehabilitation; there was no delay in the disciplinary proceedings; he was inexperienced in the practice of law; and he made timely good faith efforts to make restitution or to rectify the consequences of his misconduct. In support of his argument that, in sum, these mitigating factors are sufficiently compelling to reduce the sanction to less than disbarment, Respondent directs us to two cases, *Cappell,* 389

---

**10.** We have assumed for purposes of this case that Respondent's alcohol abuse comes under the banner of mental disability. *See supra* note 4.

Md. 402, 886 A.2d 112, and *Attorney Grievance Comm'n v. Potter*, 380 Md. 128, 844 A.2d 367 (2004).

*Cappell* does little to advance Respondent's cause. Beyond the fact that *Cappell* was primarily a case regarding the scope of conditional diversion agreements, *see supra*, the attorney in *Cappell*, unlike Respondent, was found by the hearing judge to be suffering from a mental disability that was the "root cause" of the attorney's misconduct. 389 Md. at 405, 886 A.2d at 114. In that sense, the attorney in *Cappell* established that his mental health disability was a "compelling extenuating circumstance[ ]" as described in *Vanderlinde*. Respondent does not enjoy a similarly favorable finding.

*Potter*, though factually similar in some respects, is ultimately inapposite. In *Potter*, the attorney violated MRPC 8.4(b), (c), and (d), in addition to other rules. 380 Md. at 163, 844 A.2d at 388. Potter, who had been working as an attorney for a law firm, decided to leave that firm. Potter properly informed several of the law firm's clients of his decision, which resulted in two of his clients electing to terminate their relationship with the firm in order to continue with Potter as their attorney. Prior to his departure from the firm, Potter wrongly "accessed the firm's computer and deleted the files maintained on the computer" related to those two clients. *Id.* at 137, 844 A.2d at 372. That conduct constituted violations of Rule 8.4(b), (c), and (d) in addition to CrL § 7–302, much as in Respondent's case.

Like Respondent, Potter "acted intentionally and dishonestly." *Id.* at 161, 844 A.2d at 386. We emphasized, though, that Potter "acted in an effort to facilitate his representation of the two clients and the hearing judge found that he had the clients' best interests in mind." *Id.*, 844 A.2d at 387. The actions of Respondent, in contrast, were motivated by a desire for personal gain. In the end, *Potter* and Respondent's case are materially different.[11]

---

11. The out-of-state cases upon which Respondent relies are also distinguishable. Though *In re Complaint as to the Conduct of Corey B. Smith,*

On balance, given Respondent's intentional dishonest misconduct, motivated exclusively by his desire for personal gain, the totality of the mitigation Respondent has proven does not constitute the "compelling extenuating circumstances" necessary to permit a sanction less than disbarment. *See, e.g., Attorney Grievance Comm'n v. Coppola,* 419 Md. 370, 19 A.3d 431 (2011) (disbarring an attorney who committed a "pattern" of intentional dishonest conduct related to the execution of a will, despite the fact that various mitigating factors were present in the case); *Palmer,* 417 Md. at 216, 9 A.3d at 55 (holding that disbarment of the attorney was warranted, even though he had no prior disciplinary record and was well-regarded in the legal community, where the attorney repeatedly and intentionally misappropriated client funds by transferring them from the law firm's escrow account to the firm's general account, in order to make it appear, for purposes of partnership consideration, that the attorney was bringing in more money to the firm than in fact he did, and there was no evidence that his conduct was the result of a serious and debilitating mental condition); *Attorney Grievance Comm'n v. Garcia,* 410 Md. 507, 979 A.2d 146 (2009) (disbarring an attorney who committed immigration fraud by drafting and sending to the INS a fraudulent employment verification letter); *Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485 (disbarring an attorney who intentionally misappropriated $4000 from her employer and used those funds for her own purposes, and there was no evidence that her mental disability was the "root cause" of her conduct). Accordingly, we order disbarment.

---

315 Or. 260, 843 P.2d 449 (1992), and *In the Matter of Gary M. Cupples,* 952 S.W.2d 226 (Mo.1997), both involved attorneys who wrongly and dishonestly took their respective firms' clients upon departing from their respective firms and deliberately failed to account for certain cases so as to avoid detection, neither case involved the additional dishonest (and potentially criminal) conduct present here—that is, Respondent's affirmative acts of modification, deletion, and falsification of the firm's electronic client records in violation of CrL § 7–302, in an effort to conceal his scheme.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GREGORY RAYMOND KEINER.[12]

BELL, C.J., MURPHY and ELDRIDGE, JJ., Dissent.

JOHN C. ELDRIDGE (Retired, Specially Assigned), dissenting.

In this case, I would impose a sanction of an indefinite suspension rather than disbarment. Among this Court's prior attorney grievance cases, the present case is most similar to *Attorney Grievance Commission v. Potter*, 380 Md. 128, 844 A.2d 367 (2004), in which the Court unanimously imposed a ninety-day suspension. The facts of the present case are not significantly different from the facts in *Potter*. The imposition of a suspension in the case at bar would comport with consistency and a respect for precedent.

Chief Judge BELL and Judge MURPHY join this dissenting opinion.

---

**12.** By mandating that all costs be paid by Respondent, we necessarily have declined Respondent's request for assignment of costs to the Attorney Grievance Commission, regardless of the outcome.